UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
AURORA COMMERCIAL CORP.,

                      Plaintiff,                      13 Civ. 230 (RPP)

          - against -                  **OPINION & ORDER**

APPROVED FUNDING CORP.,

                      Defendant.
------------------------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

On December 18, 2013, Plaintiff Aurora Commercial Corp. (the "Plaintiff" or "Aurora")

moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment in its favor and

against Defendant Approved Funding Corp. (the "Defendant" or "Approved").  (Pl.'s Mot. for

Summary J. ("Pl.'s Mot."), ECF No. 63.)  This motion is unopposed and for the reasons stated

below, the motion is granted, and the Plaintiff is awarded its full damages in the amount of

$134,545.88, plus pre- and post-judgment interest, attorney fees, and costs.

## I.    BACKGROUND

Aurora[1] is formerly known as Lehman Brothers Bank, FSB ("LBB").  (Pl.'s Rule 56.1

Stmt ("56.1 Stmt") ¶ 1, ECF No. 62.)  Part of LBB's business in 2007 was to purchase mortgage

loans as part of the mortgage-backed securities market.  (Id.)  Approved originated and sold

mortgage loans in 2007.  (Id.)  LBB purchased a series of loans from Approved, including Loan

Number ****3030, to borrower Hyman Sitko, ("the Sitko loan"), a second position mortgage on

the property located at 16 Amsterdam Avenue, Monsey, New York, 10952 (the "Property") with

an original loan amount of $120,000.  (Id. ¶¶ 2, 5, 12, 13; Decl. of Helen M. Placente ("Placente

---

[1] Plaintiff in this action was originally Aurora Bank, FSB.  The Plaintiff's unopposed motion for substitution of
party was granted by this court on July 31, 2013, substituting Aurora Commercial Corp. for Aurora Bank, FSB.
(Order, July 31, 2013, ECF No. 26.)

Decl."), Dec. 18, 2013, ECF No. 64; Placente Decl. Ex. 3 ("Mortgage Note"); Placente Decl. Ex.

4 ("Purchase Advice").)

The sale of the Sitko loan is governed by a Loan Purchase Agreement, which

incorporates the terms of the applicable Seller's Guide from affiliated company Aurora Loan

Services, Inc.  (56.1 Stmt ¶¶ 3, 6-10; Placente Decl. Ex. 1 ("Loan Purchase Agreement");

Placente Decl. Ex. 2 ("Seller's Guide").)  The Loan Purchase Agreement and the Seller's Guide

contain certain warranties and representations by Approved, including a warranty that none of

the loans in the transaction, including the Sitko loan, were subject to an early payment default

(first or second payment not made by the borrower by the due date).  (56.1 Stmt ¶¶ 6-10; Loan

Purchase Agreement § 2 (Incorporation of Seller's Guide); Seller's Guide §§ 703(1) (seller

represents that all payments under the mortgage loan are current); 703(18) (seller represents that

there are no defaults existing under the mortgage); 715 (defining early payment default).)

Approved agreed that if any of the loans in the transaction suffered an early payment default,

then Approved would repurchase the defaulting loan.  (Seller's Guide §§ 710, 715.)  The Sitko

loan suffered from an early payment default.  (56.1 Stmt ¶¶ 15-17; Placente Decl. Ex. 5 ("Pay

History").)  Aurora, as predecessor to LBB, submitted a repurchase demand on May 15, 2007

demanding repurchase of the Sitko loan.  (56.1 Stmt ¶ 18; Placente Decl. Ex. 6 ("Repurchase

Demand").)  Approved did not repurchase the Sitko loan.  (56.1 Stmt ¶ 18.)

Sitko, the borrower, executed a short sale of the subject Property for $310,000, which

amount represented less than the value of the first mortgage.  (56.1 Stmt ¶ 19; Placente Decl. Ex.

7 ("Order to Show Cause on Stay of Foreclosure/Auction"), at 4.)  The Sitko loan at issue here

was a second mortgage on the Property.  After the short sale, Aurora and LBB determined that

there was insufficient equity to provide collateral for the Sitko loan, and entered a charge-off of

the loan on February 25, 2008.  (Placente Decl. ¶ 27.)

Aurora filed the instant lawsuit on January 10, 2013 on the grounds that Approved breached its obligations under the Loan Purchase Agreement and the Seller's Guide to repurchase the Sitko loan.  (Compl., ECF No. 1.)  On February 19, 2013, Approved filed a motion to dismiss the complaint based on res judicata, first to file doctrine, and forum non conveniens. (Def. Mot. to Dismiss Compl. ("Def. Mot. Dismiss") 2-4, ECF No. 7.)  This Court denied Approved's motion to dismiss from the bench.  (Tr. of May 23, 2013 Hr'g ("Hr'g Tr. 5/23/13"), ECF No. 19.)  On August 28, 2013, Approved filed a motion to transfer venue to the District of New Jersey.  (Def.'s Mot. to Change Venue to Dist. of New Jersey ("Def.'s Venue Mot."), ECF No. 36.)  This Court denied the motion to transfer venue from the bench on October 2, 2013.  (Tr. of Oct. 2, 2013 Hr'g ("Hr'g Tr. 10/2/13").)

On December 3, 2013, Approved's counsel filed a motion to withdraw.  (Def.'s Mem. of Law in Supp. of Mot. for Scott McCleary to Withdraw ("Mot. to Withdraw"), ECF No. 53.)  The Court issued an Order giving Approved until December 9, 2013 to appoint new counsel.  (Order, Dec. 6, 2013, ECF No. 55.)  Approved failed to do so.  On December 16, 2013, the Court ordered Approved to "retain counsel immediately or face a summary judgment granted on Defendant's failure to file opposition papers."  (Order, Dec. 16, 2013, ECF No. 56.)  Approved failed to retain new counsel.  The instant motion for summary judgment was filed by Aurora on December 18, 2013, and served on Approved. (Pl.'s Mot. at 9.)  On December 19, 2013, the Court granted Approved's counsel's motion to withdraw.  (Order, Dec. 19, 2013, ECF No. 65.)  As of April 8, 2014, Approved had not retained new counsel or filed any opposition to Aurora's summary judgment motion.  The Court thus treats the Plaintiff's motion for summary judgment as unopposed.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). It is the movant's burden to show that no genuine factual dispute exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether the moving party has met its burden of showing the absence of a genuine issue for trial, the court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement, but must be satisfied that citations to evidence in the record support the assertions. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A court must resolve all ambiguities and draw all reasonable inferences against the moving party. Id.

If the moving party meets its burden, the burden shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When, however, the adverse party does not respond to a motion for summary judgment, "summary judgment, if appropriate, shall be entered against the adverse party." Id. The facts set forth in the moving party's unopposed Rule 56.1 statement of material facts are assumed to be true. Universal TV Distribution Holdings LLC v. Walton, No. 03 Civ. 9133 (GBD), 2004 WL 2848528, at *2 (S.D.N.Y. Dec. 9, 2004) ("In an unopposed motion for summary judgment, plaintiff's recitation of the facts is assumed to be true."); Local Rule 56.1(c) ("All material facts set forth in the statement [of material facts annexed to the motion] required to be served by the

moving party will be deemed to be admitted unless controverted by the statement [included with the opposition to the motion] required to be served by the opposing party.").

### B.  The Breach of Contract Claim

Aurora argues that Approved has breached the Loan Purchase Agreement by refusing to repurchase the Sitko loan or to otherwise make Aurora whole after it suffered an early payment default, as required by the Loan Purchase Agreement and the incorporated Seller's Guide. Having examined the Loan Purchase Agreement, the Seller's Guide, and being satisfied that citations to evidence in the record support the assertions made by Aurora in its Rule 56.1 statement of undisputed facts, the motion for summary judgment is granted.

The Court evaluates Aurora's claims for breach of contract under New York law pursuant to the choice-of-law provision in the parties' agreement.  (Loan Purchase Agreement § 8 ("This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York.").)  Under New York law, the elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance by the plaintiff, (3) the defendant's failure to perform, and (4) resulting damage.  Clearmont Prop., LLC v. Eisner, 872 N.Y.S.2d 725, 728 (N.Y. App. Div. 2009).

There is no dispute as to the satisfaction of the first element, the existence of a valid contract.  (56.1 Stmt ¶ 2; see generally Loan Purchase Agreement; see also Def.'s Mot. to Dismiss at 5 ("On or about January 14, 2005, Defendant entered into a written Loan Purchase Agreement…with LBB (subsequently known as Aurora).").)  There is similarly no dispute as to the second element, Aurora's performance on the contract.  Section one of the Loan Purchase Agreement provides that the purchaser, LBB, agrees to purchase the loans described in the agreement pursuant to the terms and conditions of the Seller's Guide.  (Loan Purchase

Agreement § 1.)  Approved sold the Sitko loan to Aurora's predecessor, LBB, who paid

$121,006.81 for the Sitko loan on January 29, 2007.  (Purchase Advice.)  Aurora is the successor

entity to LBB.  (Compl. ¶ 1; Rule 7.1 Corp. Disclosure Stmt, ECF No. 6; 56.1 Stmt ¶ 1.)

Because the Loan Purchase Agreement required LBB, now Aurora, to purchase the Sitko loan

and pay value, and the record clearly supports the conclusion that it did so, there can be no

genuine issue of material fact as to the Plaintiff's performance of the contract.

As to the third element, the Defendant's failure to perform on the contract, the borrower,

Sitko, never made the first payment of his loan, due in March 2007, or any payments due in

April 2007.  (Placente Decl., Ex. 5 ("Pay History").)  By definition, therefore, the Sitko loan was

subject to an early payment default pursuant to section 715 of the Seller's Guide.  (Seller's Guide

§ 715 ("[A] Mortgage Loan has an early payment default if either the first or second monthly

payment due the Purchaser is not made within 30 days of each such monthly payment's

respective due date.").)  By the terms of the Seller's Guide, "if a loan becomes an Early Payment

Default in accordance with Section 715 herein, Seller shall, at Purchaser's option, repurchase the

related Mortgage Loan…at the Repurchase Price.  Any such repurchase shall occur no later than

thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or

the date on which Seller knows of such breach."  (Id. § 710.)

On May 15, 2007, Aurora sent a letter to Approved that informed Approved that the

Sitko loan was in early payment default and provided, inter alia, "Because the loan did not meet

Lehman's purchase requirements, we ask that you fulfill your obligations pursuant to the

Agreement and Seller's Guide and repurchase the loan within 30 days of the date of this letter.

In certain circumstances, as a special courtesy to our correspondents, Lehman may permit you to

pursue alternatives to repurchase, including a cure of defect within a reasonable time period,

indemnification of Lehman, or repricing of the loan.   Lehman's offer to Approved Funding

Corp. of an alternative to repurchase may not be construed to prejudice or waiver [sic] of any rights Lehman has to request repurchase of the Loan at a later time." (Repurchase Demand at 2.) There is no dispute that Approved did not repurchase the Sitko loan. (56.1 Stmt ¶ 18; Def.'s Mot. to Dismiss at 3.)

In its motion to dismiss, Approved argued that Aurora's May 2007 letter did not constitute a demand for repayment and that therefore Approved was under no obligation to repurchase the Sitko loan.[2] (Def.'s Mot. to Dismiss at 7.) Approved argued that the May 2007 letter simply indicated that Aurora could demand repurchase in the future. (Id.) In support of its motion, Approved presented emails exchanged between Approved and Aurora discussing the Sitko loan between September 6, 2007 and February 13, 2008. (Decl. of Ari Weisbrot in Supp. of Def.'s Mot. to Dismiss ("Weisbrot Decl."), Feb, 19, 2013, Exs. D-E, ECF No. 8.) In those emails, the parties attempted to negotiate an alternative resolution to the repurchase of the Sitko loan, but no negotiated resolution was ever reached.[3] (Id.)

Considering the entirety of the record, there is no genuine issue of material fact that Approved failed to perform on the agreement between the parties. The Seller's Guide, as incorporated into the Loan Purchase Agreement, unequivocally provides that if Approved sold a loan to LBB/Aurora that was subject to an early payment default, it was obligated to repurchase

---

[2] The Court denied Approved's motion to dismiss, but considers the exhibits cited in its support as part of the entirety of the record. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials [cited in the summary judgment motion], but it may consider other materials in the record.").

[3] In an email sent on September 6, 2007, a representative from Aurora stated that "the only option in lieu of repurchase is an indemnity for make whole with a loss deposit." (Weisbrot Decl. Ex. D at 6.) On that same day, a representative from Approved responded that "repurchasing the loan within the given timeframe is unfeasible" and asked to discuss "other possible resolutions." (Id. Ex. D at 7.) Over the next few months, the email exchange indicates that Approved and Aurora negotiated over what an appropriate projected loss figure would be. (Id. Ex. D at 9-11.) Finally, in an email on February 12, 2008, a representative from Aurora indicated that they are "reaching out to you for 1 last time to try to reach a resolution" with an attached proposal, and stated that "we need to finalize a resolution prior to end of the week to avoid escalating your company to our legal division." (Id. Ex. E at 2.) No resolution was ever reached.

that loan.  The Sitko loan was subject to an early payment default, and Aurora informed

Approved that the Sitko loan was subject to an early payment default in the May 15, 2007 letter

and demanded repurchase.  Approved failed to repurchase the loan, as required by the

agreement.  The early payment default and Approved's failure to repurchase the Sitko loan

constitute a breach of the agreement.  The fact that Aurora entered into negotiations with

Approved subsequent to the mailing of the May 15, 2007 letter does not alter this conclusion.

Such negotiations did not foreclose Aurora's ability to exercise its right under the agreement to

demand repurchase, as the May 15, 2007 letter indicated.  (Repurchase Demand at 2 ("Nothing

in this letter may be construed to prejudice any rights or remedies that Lehman may have under

the Agreement, [or] the Seller's Guide.").)  Approved's claim that Aurora did not demand

repurchase of the Sitko loan is contradicted by the language of the May 15, 2007 letter and the

record as a whole.  Therefore, there is no genuine issue of material fact as to the third element of

the breach of contract claim, Approved's failure to perform on the contract.

Finally, there is no dispute that Aurora was damaged by Approved's breach of the

agreement.  Aurora purchased the Sitko loan on January 29, 2007 for $121,006.81.  (56.1 Stmt

¶ 13; Purchase Advice.)  The Sitko loan did not perform.  Since it was a second lien on the

subject Property, it was completely wiped out by the foreclosure of the first position mortgage.

Aurora was left with a non-performing loan with no collateral.  That failure caused the loss of

Aurora's investment.

For the foregoing reasons, the Court finds that Aurora has met its burden of

demonstrating that no genuine factual dispute exists in Aurora's breach of contract claim against

Approved.  Approved has made no showing to dispute the facts presented by Aurora.  The Court

therefore grants Aurora's motion for summary judgment against Approved.

### C.  Computation of Damages

The Seller's Guide provides that the repurchase shall be made at the "Repurchase Price." (Loan Purchase Agreement § 710.)  The repurchase price is defined in the Loan Purchase Agreement as an amount equal to "(i) the greater of the Purchase Price or par multiplied by the outstanding principal balance of the Mortgage Loan as of the Purchase Date; less (ii) the aggregate amount received by Purchaser of reductions and curtailments of the principal balance of the Mortgage Note; plus (iii) any and all interest payable on the outstanding principal balance of the Mortgage Note as of the date of repurchase; plus (iv) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Purchaser in the exercise by Purchaser of its rights and remedies in connection with the Mortgage Loan, the Mortgaged Property, and/or the Mortgagor, as more specifically identified in this Seller's Guide."  (Seller's Guide § 800.)

The repurchase price calculation is an adequate method for calculating damages.  See LaSalle Bank Nat'l Ass'n. v. CIBC, Inc., No. 08 Civ. 8426 (WHP), 2012 WL 112208, at *2 (S.D.N.Y. Jan. 12, 2012) (finding that the Pooling Service Agreement's repurchase price calculation provided an "adequate method for calculating damages"); LaSalle Bank Nat'l Ass'n. v. Capco Am. Securitzation Corp., No. 02 Civ. 9916 (RLC), 2005 WL 3046292, at *5 (S.D.N.Y. Nov.14, 2005) ("The parties agreed to a method of calculating the repurchase price.  By awarding damages in the amount that [defendant] agreed to pay in the event of breach, the court will make LaSalle whole.").

Aurora has lost its initial investment of $121,006.81 plus accrued interest. (Purchase Advice.)  For the purposes of calculation here, Aurora has elected to use the unpaid principal balance of $119,974.07.  (Placente Decl. ¶ 28; Pay History at 1.)  There is no need to subtract any amount from the unpaid principal balance, because Aurora never received any payments under the Sitko loan.  (Pay History at 1.)  The loan accrued $14,571.81 through the charge-off

date of February 25, 2008 at a Note rate of 13.25%.  (Placente Decl. ¶ 28.)  Therefore, the total

amount in damages is $134,545.88, adding unpaid interest to the unpaid principal balance.  (56.1

Stmt ¶ 21.)  Applying the contractual formula agreed to by the parties, then, Aurora is entitled to

$134,545.88.  Aurora is also entitled under the contract to reasonable attorneys' fees, costs and

pre- and post-judgment interest.  (Seller's Guide § 711 ("In addition to any repurchase and cure

obligations of Seller,…Seller shall indemnify Purchaser…from and hold them harmless

against…court costs, reasonable attorney's fees, judgments, and any other costs…").)

## III.  CONCLUSION

For the foregoing reasons, Aurora's unopposed motion for summary judgment is granted

in the amount of $134,545.88 plus attorney's fees, costs and pre- and post-judgment interest.


SO ORDERED.


Dated:  New York, New York
        April 8, 2014

_____/s/_____

Robert P. Patterson, Jr.
United States District Judge



**Copies of this Opinion & Order Sent To:**


*Counsel for Plaintiff*


**Christopher P. Carrington**
Foster Graham Milstein & Claisher, LLP
360 S. Garfield Street, 6th Floor
Denver, Co 80209
(303)-303-9810
Email: carrington@fostergraham.com



*Defendant*

**Approved Funding Corp.**

c/o Shmuel Shayowitz, President
41 Grand Avenue
River Edge, NJ 07661