UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
AURORA COMMERCIAL CORP.,

                        Plaintiff,                      13-CV-230 (RPP)

               - against -                    **OPINION & ORDER**

APPROVED FUNDING CORP.,

                      Defendant.
------------------------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

        In an Opinion and Order dated April 9, 2014, (Op. & Order, Apr. 9, 2014, ("Op. & Order"), ECF No. 66), this Court granted the unopposed motion for summary judgment made by Plaintiff Aurora Commercial Corp. (the "Plaintiff" or "Aurora"), and awarded attorney fees and costs to the Plaintiff in its suit against Defendant Approved Funding Corp. (the "Defendant" or "Approved").  On June 2, 2014, the Plaintiff filed an application for $36,992.50 in attorney fees and $3,621.24 in litigation costs.  (Mot. for Att'y Fees and Costs ("Pl.'s Appl."), ECF No. 69.) This motion is unopposed and for the reasons that follow, Aurora is awarded $36,925.50 in attorney fees and $2,365.68 in litigation costs.

**I.    BACKGROUND[1]**

        On June 2, 2014, Aurora filed an application for attorney fees and costs requesting $36,992.50 in attorney fees and $3,621.24 in litigation costs.  (Pl.'s Appl. at 1-2.) The application details the history of the litigation: Aurora's counsel opposed a motion to dismiss and a motion to change venue filed by Approved, conducted discovery, and moved for summary

---

[1] Because the factual and procedural history of this case was discussed at length in a previous Opinion of this Court, dated April 9, 2014, (see Op. & Order), the Court recounts the history of this case only as is necessary to dispose of the pending issues.

judgment.  (Id. at 2.)  After Aurora filed its motion for summary judgment, Approved's counsel withdrew and Approved has not since retained new counsel, despite orders to do so from the Court.  (Def.'s Mem. of Law in Supp. of Mot. for Scott McCleary to Withdraw, ECF No. 53; Order, Dec. 17, 2013, ECF No. 57.)  The Court granted Aurora's unopposed motion for summary judgment and issued an Opinion and Order on April 9, 2014, awarding Aurora full damages of $134,545.88, plus reasonable attorney fees, costs, and pre- and post-judgment interest.  (Op. & Order at 10.)

Aurora's application for attorney fees and costs includes time sheets listing the number of hours attorneys spent on the case and the hourly rates they charged.  (Aff. in Supp. of Appl. for Att'y Fees ("Aff. Att'y Fees"), ECF No. 70; Aff. Att'y Fees Ex. A, ECF. No. 70-1; Aff. Att'y Fees Ex. B, ECF No. 70-2.)  The hours spent on litigation and hourly rates charged are as follows:

> Christopher P. Carrington—licensed attorney for 9 years—partner—35.50 hours at Ackerman Senterfitt ("Ackerman") and 62.90 hours at Foster, Graham, Milstein & Calisher ("FGMC")—$260.52 billing rate at Ackerman and $250.00 billing rate at FGMC—$19,149.72
>
> Melissa Cizmorris—licensed attorney for 4 years—associate—.20 hours—$265.00 billing rate—$53.00
>
> Victoria E. Edwards billed—licensed attorney for 11 years—partner—.50 hours—$350.00 billing rate—$175.00
>
> Justin D. Balser—licensed attorney for 14 years—partner—1.10 hours—$350.00 billing rate—$385.00
>
> Kelly J. Garcia—licensed attorney for 16 years —partner—.40 hours—$350.00 billing rate—$140
>
> Linda K. Fowlie—director of information resources for 16 years—.40 hours—$140.00 billing rate—$56.00
>
> Kristine L. Elliot—paralegal for 15 years—30.90 hours—$106.80 billing rate—$3,300.00
>
> Michael Gates—licensed attorney for 15 years—partner—46.40 hours—$250.00 billing rate—$10,438.63
>
> Isabelle Young—licensed attorney for 5 years—associate—4.10 hours—$200 billing rate—$647.97

2

> Melanie MacWilliams-Brooks—licensed attorney for 2 years—associate—7.30 hours—$175.00 billing rate—$1,277.50
>
> Dyanna Spicher—paralegal for over 12 years—14.40 hours—$100.00 billing rate—$1,369.68

As of the date of this writing, August 4, 2014, Approved has not retained new counsel or filed any opposition to Aurora's application, despite having been provided a copy of Aurora's application for attorney fees and costs via mail. (Pl.'s Letter, July 11, 2014, ECF No. 72.) The Court thus treats the Plaintiff's motion for attorney fees and costs as unopposed.

## II. DISCUSSION

Aurora is entitled to attorney fees pursuant to this Court's Opinion and Order of April 9, 2014, and the terms of their contract with Approved. (Op. & Order at 10; Decl. of Helen M. Placente in Supp. of Mot. for Summary J. ("Placente Decl."), Dec. 18, 2013, ECF No. 64; Placente Decl. Ex. 2 ("Seller's Guide")[2] § 711 ("Seller shall indemnify Purchaser…from and hold them harmless against…court costs, reasonable attorney's fees, judgments, and any other costs, fees, and expenses that the Purchaser may sustain in any way related to or resulting from any…breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement.").) Upon a review of Aurora's attorneys' time sheets and having considered their arguments for the reasonableness of their fees and costs, $36,981.50 of the attorney fees and the portion of the litigation costs that were itemized are found to be reasonable.

---

[2] As discussed in this Court's Opinion and Order of April 9, 2014, the Loan Purchase Agreement, the agreement between Aurora and Approved, incorporated the terms of the applicable Seller's Guide from affiliated company Aurora Loan Services, Inc. (Op. & Order at 2.)

### A. Reasonable Attorney Fees

Federal courts sitting in diversity apply state law to determine an award of attorney fees and costs. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005) (citing prior Second Circuit holdings that in a diversity action state law creates the substantive right to attorney fees). The Court evaluates Aurora's application for attorney fees under New York law pursuant to the choice-of-law provision in the parties' agreement. (Placente Decl. Ex. 1 ("Loan Purchase Agreement") § 8 ("This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York.").)

New York law enforces contract provisions providing for attorney fees and costs. Simone v. Liebherr Cranes, Inc., 935 N.Y.S.2d 337 (App. Div. 2011) (holding that a contract providing for attorney fees entitled party to judgment as a matter of law on the issue of whether its counterparty owed attorney fees). The sum the court grants for attorney fees must be a reasonable amount. Matter of Rahmey v. Blum, 466 N.Y.S.2d 350, 356 (App. Div. 1983). New York law authorizes courts to supervise the charging of fees for professional services under the court's inherent statutory power to regulate the practice of law. See RMP Capital, Corp. v. Victory Jet, LLC, No. 6197-12, 2013 WL 5303582, at *6 (N.Y. Sup. Ct. Sept. 11, 2013) (citing Greenwald v. Scheinman, 463 N.Y.S.2d 303 (App. Div. 1983); Hom v. Hom, 622 N.Y.S.2d 282 (App. Div. 1994)). "New York Courts have broad discretion in determining what constitutes reasonable compensation for legal services." Id. at 6. In exercising its discretion, "[a] court may consider its own knowledge and experience and may form an independent judgment from the facts and evidence before it as to the nature and extent of the services rendered." Id. (citing Jordan v. Freeman, 336 N.Y.S.2d 671 (App. Div. 1972)).

The court uses its independent judgment to ascertain "the presumptively reasonable fee," which is the product of a reasonable hourly rate multiplied by a reasonable number of hours expended on the litigation. RMP Capital, 2013 WL 5303582, at *7. The reasonable hourly rate is the rate that a paying client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). The court ascertains the reasonable hourly rate by determining the prevailing hourly rate in the community and considering the following case-specific factors: "(1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained (to the extent known)." RMP Capital, 2013 WL 5303582 at *7 (citing Sequa Corp. v. GBJ Corp., 156 F3d 136, 148 (2d Cir. 1998) (internal citations omitted)). The court ascertains the number of hours reasonably expended on the litigation by reviewing the applicant's time sheets and assessing them in light of the same case-specific factors. See id. at 10.

1. *Reasonable Hourly Rate*

The reasonable hourly rate for an attorney "should be based on the customary fee charged for similar services by lawyers in the community with like experience and comparable reputation to those by whom the prevailing party was represented." Gamache v. Steinhaus, 776 N.Y.S.2d 310 (App. Div. 2004). The burden is on the fee applicant to establish the prevailing hourly rate for the work performed. See Gutierrez v. Direct Mktg. Credit Servs., Inc., 701 N.Y.S.2d 116, 117 (App. Div. 1999). "The appropriate hourly rates are also influenced by the court's consideration of [the case-specific factors such] as the time and labor required to obtain the ultimate objective, the novelty and complexity of the issues…and comparable awards in similar cases in the community." RMP Capital, 2013 WL 5303582, at *7.

Here, the relevant community is the Denver metropolitan area. (Aff. Att'y Fees.) The Affidavit in Support of the Application for Fees and Costs, submitted by Christopher P. Carrington, Esq., states that hourly rates charged by Akerman and FGMC are "commensurate with (or below) the hourly rates charged by other attorney and paraprofessionals with similar experience in the Denver metropolitan area," (Aff. Att'y Fees ¶ 18), but provides no evidence in support. In the absence of evidence submitted by counsel, the Court is required to turn to case law to guide its determination of the customary fee charged in the relevant legal community. See RMP Capital, 2013 WL 5303582, at *9.

In Scott v. City of Denver, Judge Marcia S. Krieger of the District of Colorado found that the prevailing rates in Denver for experienced litigators in commercial disputes "approach $400 per hour" with "$450 per hour representing the maximum hourly rate that could be considered reasonable for lead trial counsel." No. 12-CV-00053 (MSK)(BNB), 2014 WL 287558, at *2 (D. Colo. Jan. 27, 2014) (citing Xtreme Coil Drilling Corp. v. Encana Oil & Gas Corp., 958 F. Supp. 2d 1238 (D. Colo. 2013)). Billing rates for associates ranged from $150 per hour to $260 per hour. Id. Finally, typical billing rate for paralegals approached $175 per hour. Xtreme Coil Drilling Corp., 958 F. Supp. 2d at 1257.

Christopher P. Carrington, Esq., is a partner and served as lead trial counsel in this litigation. Given that Carrington has been a licensed attorney for nine years and that he billed nearly 100 hours on this case, he can be expected to command hourly rates near the top of the scale. His hourly rates of $260.52 while at Ackerman and $250.00 while at FGMC are far lower than the $450 per hour rate cited as reasonable for lead trial counsel in Denver by the Scott court. The Court therefore finds his hourly rates to be reasonable.

Next, the Court shall consider the hourly rates of Ackerman attorneys and staff.

Attorneys Victoria E. Edwards, Esq., Kelly J. Garcia, Esq., and Justin D. Balser Esq., each have more than a decade of experience. Each billed an hourly rate of $350 and none billed more than two hours of work. Though their experience supports an hourly rate near the top of the scale, the rates they charge are below the Scott court's suggested maximum of $400 for experienced litigators. The Court finds that their rates take into account their limited expenditure of time on this litigation.

The Court must reduce the hourly rate charged by Melissa Cizmorris, Esq. First, she has been an attorney for only four years. Second, her involvement with the case was minimal, billing only .20 hours. Her experience and the time she expended on the case do not support hourly rates in excess of the prevailing rate for associates in the Denver metropolitan area. The Court will reduce her requested rate of $265 to $210, which is the median associate rate in the Denver metropolitan area. Scott, 2014 WL 287558, at *2.

As to staff, Kristine L. Elliot, a paralegal, has over a decade of experience. Elliott billed 30.90 hours and requests an hourly rate of $106.80. This hourly rate is below the median billing rate for paralegals in the Denver metropolitan area, where typical billing rates for paralegals approach $175 per hour. Xtreme Coil Drilling Corp., 958 F. Supp. 2d at 1257. The Court holds that her requested rate takes into account their experience and are reasonable.

The Court must deduct, from the total attorney fee award, the $56.00 requested for the work of Linda K. Fowlie, the Director of Information Resources at Ackerman. The Affidavit in Support of the Application for Fees and Costs does not describe Fowlie's position, but it appears to be administrative. Fowlie billed .40 hours, and the time she billed for is described only as, "Research regarding background of Approved Funding Corporation." This entry does not appear to the Court to describe legal work, and is sufficiently vague that awarding fees for the .40 hours billed by Fowlie is unwarranted.

Finally, the Court shall consider the hourly rates of FGMC attorneys and staff.

The Court finds that the hourly rate of $250 for Michael Gates, Esq., a partner who has been a licensed attorney for fifteen years, is reasonable in light of his extensive involvement, as reflected in his billing 46.40 hours of work, and the fact that his requested billing rate is well below the prevailing rate of $400 for experienced litigators in the Denver metropolitan area. Scott, 2014 WL 287558, at *2.

Isabelle Young, Esq., is a mid-level associate and therefore should be able to command the median associate rate in the Denver metropolitan area, between $150 per hour to $260 per hour. The Court finds that her hourly rate of $200 takes into account her limited expenditure of time in this litigation. Similarly, Melanie MacWilliams, Esq., billed 7.30 hours on this litigation and she has been an attorney for only two years. The Court finds her hourly rate of $175 per hour reasonable in light of her involvement and experience.

As to the hourly rate for paralegal Dyanna Spicher, the Court holds that $100 per hour is a reasonable rate given an upper bound in the Denver metropolitan area of $175. Xtreme Coil Drilling Corp., 958 F. Supp. 2d at 125.

2. *Hours Expended*

In determining the presumptively reasonable fee, a court may adjust the hours actually billed to a number the court determines to have been reasonably expended on the litigation. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Making this determination requires a court consider the case-specific factors noted above. RMP Capital, 2013 WL 5303582, at *11 (the case-specific factors the court considers are: (1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the equality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue;

and (7) the results obtained). After a careful review of the record, no hourly reduction is warranted.

With regard to the factor concerning the results obtained, counsel was successful on summary judgment and Aurora was awarded its full damages of $134,545.88. The second factor weighing in favor of a finding of reasonableness is the complexity of the issues involved in this case. Aurora counsel had to contend with issues of diversity, interpretation of a lengthy underlying contract, giving notice to an opposing party who was unresponsive, and, as counsel appearing in the jurisdiction pro hac vice, rules of practice in the Southern District of New York. Third, and relatedly, Aurora's counsel was obligated to expend a substantial amount of time and resources drafting papers and researching Defendant's arguments for the motion to dismiss and to change venue, tasks which required a high level of legal skill to perform properly. Fourth, the fees requested by counsel are around $100,000.00 less than the damages Aurora received. Finally, the Court notes that counsel's application for attorney fees is unopposed.

In reviewing the billing record, the Court notes block-billed entries or mixed entries in the billing statements. Block billing, the "'lumping together of discrete tasks[,] makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." RMP Capital, 2013 WL 5303582, at *11 (citing Penberg v. Healthbridge Mgt., No. 08 CV 1534 (CLP), 2011 WL 1100103, at *6 (EDNY March 22, 2011)). Attorney Michael J. Gates repeatedly used block-billing. (Aff. Att'y Fees Ex. B, at 8-9.) One entry made on December 16, 2013, for 6.70 hours reads:

> Supplement pleadings and documents for Motion for Summary Judgment; analyze additional informaiton [sic] from file and prepare declaration of Helen Placente; email exchanges; prepare draft letter to court on extension; attention to additional changes; attention to court order on extension; supplemental statement of facts and declaration; email to Helen Placente regarding the same.

(Id. at 9.)

In response to the practice of block-billing, courts "have endorsed percentage cuts as a practical means of trimming fat from a fee application." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983).

The Court declines to reduce counsel's proposed number of hours on the basis of block-billing. This case's difficulty warrants the number of hours counsel actually expended. Further, additional factors that courts have used to support their reductions are absent from this case. On otherwise similar facts, the court in RMP Capital noted that billing travel time at the normal hourly rate would warrant a reduction of hours. 2013 WL 5303582, at *12. A similar reduction should be made for vague explanations of the tasks for which attorneys billed hours. Id. (vague explanations were "instances where billing fails to offer any explanation except for time devoted to 'issues,' 'work on case,' and 'litigation.'"). The attorneys in this case do not seek attorney fees for hours expended travelling, and their entries are sufficiently detailed to convey to the reader the tasks for which they billed. For the reasons discussed above, the Court finds that no hourly reduction is warranted.

### B. Reasonable Costs

Under the terms of the Seller's Guide, as incorporated into the Loan Purchase Agreement between Aurora and Approved, Aurora is entitled to both court costs and "any other costs, fees, and expenses" incurred by Aurora's counsel in the course of the litigation over the breach of the terms of the agreement between the parties. (Op. & Order at 10; Seller's Guide § 711.) The Court finds that the itemized costs billed by FGMC, which include travel expenses of Christopher Carrington from Denver, Colorado, to New York, New York, fees for online legal research with Thompson Reuters, postage costs of less than $1.00, a fee for a Certificate of Good Standing from the Clerk of the Court, and meal totals for Christopher Carrington totaling less

10

than $60.00, are reasonable and encompassed by the broad language encompassing "any other costs, fees, and expenses" incurred by counsel in the course of litigation.

However, Aurora's counsel has itemized only $2,365.68 of the $3,621.24 it requested in costs. (Aff. Att'y Fees Ex. B.) Costs requested should be itemized so that the reviewing court can determine whether each cost incurred was in fact necessary to the success of the litigation. U.S. for Use & Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp., 95 F.3d 153, 173 (2d Cir. 1996) (refusing to grant prevailing party's request for photocopying costs because requesting party had not itemized costs or explained why copies were necessary). Aurora has failed to do so, and only itemized costs may be granted. The reasonable costs awarded are therefore $2,365.68.

### III. CONCLUSION

For the foregoing reasons, Aurora's counsel is awarded a total of $39,291.18 in attorney fees and litigation costs, based on an award of $36,925.50 in attorney fees and $2,365.68 in litigation costs.

SO ORDERED.

Dated: New York, New York
August 5, 2014

　　　　　　　　　　　　　　　　　　　　　　／s／_____

Robert P. Patterson, Jr.
United States District Judge

**Copies of this Opinion & Order Sent To:**

*Counsel for Plaintiff*

**Christopher P. Carrington**
Foster Graham Milstein & Claisher, LLP
360 S. Garfield Street, 6th Floor
Denver, Co 80209
(303)-303-9810
Email: carrington@fostergraham.com

*Defendant*

**Approved Funding Corp.**
c/o Shmuel Shayowitz, President
41 Grand Avenue
River Edge, NJ 07661